IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IND HOLDING, INC., <br><br>　　　　　　　　Plaintiff, <br><br>　v. <br><br>REACHOUT TECHNOLOGY NE, HOLDINGS, LLC, and REACHOUT TECHNOLOGY CORP., <br><br>　　　　　　　　Defendants. | CIVIL ACTION <br> NO. 24-1351 |

**OPINION**

**Slomsky, J.**                                                              **August 22, 2025**

I.    INTRODUCTION ................................................................................................................. 3

II.   BACKGROUND .................................................................................................................. 4

　　A.    Membership Interest Purchase Agreement ............................................................. 4

　　B.    Secured Promissory Note ......................................................................................... 5

　　C.    Security Agreement .................................................................................................. 6

　　D.    Guarantee Agreement ............................................................................................... 7

　　E.    Convertible Promissory Note ................................................................................... 7

　　F.    Amended Purchase Agreement ................................................................................ 8

III.  STANDARD OF REVIEW ................................................................................................. 9

IV.   ANALYSIS .......................................................................................................................... 11

　　A.    The Six Contracts are Interrelated and will be Read as One Contract .............. 12

　　B.    Competing Forum Selection Clauses Render the Forum Choice Ambiguous ....14

1

C. Public Interest Factors Weigh in Favor of a Delaware Forum .......................................... 16

V. **CONCLUSION** ................................................................................................................. 19

**I.   INTRODUCTION**

In this case, different parties entered into six (6) interrelated agreements, some of which had forum selection clauses and some of which did not. The forum selection clauses are not all the same. When there are conflicting forum selection clauses, which one governs and whether the case should remain in this Court are the central questions to be decided here.

The parties in this case are as follows:

- Plaintiff: IND Holdings, Inc. ("Plaintiff" or "IND Holdings"). Plaintiff had a Membership Interest in the company Innovative Network Designs, LLC d/b/a IND, LLC ("Innovative Network Designs").

- Defendant #1: ReachOut Technology NE Holdings ("RTNE"). RTNE, along with the next defendant, purchased Plaintiff's Membership Interests in Innovative Network Designs through a Membership Purchase Agreement ("Purchase Agreement"). To secure the Purchase Agreement, RTNE signed a Secured Promissory Note, a Security Agreement and a Convertible Promissory Note.

- Defendant #2: ReachOut Technology Corporation ("RTC"). RTC is the parent company of RTNE and also a party to the Purchase Agreement. RTC secured RTNE's cash payment for RTNE's purchase of the Membership Interests in Innovative Network Designs. RTC also guaranteed the obligations of RTNE under the Purchase Agreement, Secured Note, Security Agreement and "all amendments, addenda, modifications, renewals and replacements thereof, and any agreement related thereto" in a Guarantee Agreement.

Altogether, there were six (6) agreements that relate to the purchase of Plaintiff's Membership Interests in Innovative Network Designs: (1) The Purchase Agreement, (2) the

Secured Note, (3) the Security Agreement, (4) the Convertible Note, (5) the Guarantee Agreement and (6) an Amended Purchase Agreement. They are described in more detail infra.

Plaintiff IND Holdings alleges Defendants RTNE and RTC breached the agreements and brought suit in this Court based on diversity of citizenship jurisdiction. (Doc. No. 1 at ¶ 5.) Specifically, Plaintiff alleges in the Complaint the following: (1) breach of the Purchase Agreement by both Defendants (Count I), (2) breach of the Convertible Note by RTC only (Count II), (3) breach of the Secured Note by both Defendants (Count III), and (4) foreclosure on collateral (Count IV). (Id.)

In response, Defendants filed a Motion to Dismiss the Complaint relying on the doctrine of forum non conveniens arising from the forum selection clause in the Convertible Note. (Doc. Nos. 9, 10.) The Convertible Note's forum selection clause mandates that any litigation over that agreement must be brought in Will County, Illinois. (See id.)

Plaintiff opposes the Motion because the Secured Note and Guarantee Agreement contain forum selection clauses that require the litigation to be brought in Delaware. (See Doc. No. 12.) It further argues that the agreements are interrelated and for this reason the District of Delaware is the proper forum given the ambiguity in the forum selection clauses. (Id.)

For the reasons stated below, Defendants' Motion to Dismiss (Doc. No. 9) will be denied.

## II.     BACKGROUND

### A.     Membership Interest Purchase Agreement

On August 1, 2022, Plaintiff entered into the Membership Interest Purchase Agreement (the "Purchase Agreement") with RTNE and RTC for the purchase of Plaintiff's Membership Interests in the company Innovative Network Designs. (Doc. No. 1 at ¶¶ 14-15.) Defendants originally agreed to pay in part with cash at closing for the Membership Interests and the rest was secured through the Secured Promissory Note. (Id. at ¶ 16.)

4

Under the terms of the Purchase Agreement, RTNE also agreed to pay premiums for Fixed Index Universal Life Insurance Policies ("IUL Premium Payments") for Douglas Rahn, the President of IND Holdings, and Eric Speidel, a stockholder in IND Holdings. (Id. at ¶ 28.) In total, RTNE agreed to pay three million six-hundred thousand dollars ($3,600,00) for both Rahn and Speidel in IUL Policy Premiums. (Id. ¶¶ 28(a), (b).)

The Purchase Agreement stated the governing law in the event of a breach as follows:

> This agreement shall be governed by and construed in accordance with the domestic laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

(See Doc. No. 13-2.)[1] The Purchase Agreement had no forum selection clause.

## B. Secured Promissory Note

The parties agreed that a portion of the Purchase Agreement price would be paid through a Secured Promissory Note (the "Secured Note"). (Doc. No. 1 ¶ 16; Doc. No. 13-1.)

On September 1, 2022, the Secured Note was executed by RTNE and Plaintiff. (Id. at ¶ 24; Doc. No. 13-1.) RTNE promised to pay Plaintiff a principal sum of one million five-hundred thousand dollars ($1,500,000) with interest accruing on the outstanding principal balance at a seven percent (7%) rate per annum. (Id.)

---

[1] Plaintiff did not attach copies of any of the agreements to the Complaint, although they are referenced therein. However, Defendants attached the agreements to the Motion to Dismiss, and a court may consider documents incorporated by reference in the pleadings when deciding a motion to dismiss. See Senju Pharm. Co., Ltd. v. Apotex, Inc., 921 F. Supp. 2d 297, 306 (D. Del. 2013) (explaining that, when reviewing a motion to dismiss filed under Rule 12(b)(6), "[a] court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference"). The six (6) documents described above are referenced in the Complaint. (See generally Doc. No. 1.) A copy of the Amended Purchase Agreement was provided to the Court after a hearing on the Motion to Dismiss was held with counsel for the parties, where it was revealed that the Purchase Agreement was amended on September 2, 2022. (See Doc. No. 19.)

5

The Secured Note stated the governing law and forum selection as follows:

> This Note and rights and duties of the parties will be construed and determined in accordance with the laws of the state of Delaware (without giving effect to any choice or conflict of law provisions), and all actions to enforce the provisions of this Note will be brought only in a court of competent jurisdiction in the state of Delaware. EACH PARTY HERETO IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS NOTE OR THE ACTIONS OF ANY PARTY HERETO IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT THEREOF.

(See Doc. No. 13-1.)

On or prior to April 15, 2024, RTNE defaulted on the Secured Note payments. (Doc No. 1 ¶ 34.)

### C.     Security Agreement

On the same date the Secured Note was signed, September 1, 2022, a Security Agreement was also executed between Plaintiff and RTNE. (Id. at ¶ 30; Doc. No. 13-3.) The purpose of the Security Agreement was to provide Plaintiff collateral in the Membership Interests and all proceeds and products thereof in the event RTNE defaulted on any of its obligations under the Secured Note, Purchase Agreement, or the IUL Premium Payments. (Id.)

The Security Agreement states the governing law as follows:

> The laws of the state of Delaware govern this Agreement, and the parties' rights and obligations under it, except as to choice of law.

(Doc. No. 13-3.) The Security Agreement did not have a forum selection clause.

On or about December 5, 2023, RTNE defaulted on its payments to the IUL Premium Payments. (Doc. No. 1 at ¶ 37.)

D. **Guarantee Agreement**

The Guarantee Agreement was signed by Plaintiff and RTC.[2] (Id. at ¶¶ 31-32.) In the Guarantee Agreement, RTC promised that it would fulfill all obligations of RTNE in case of default. (Id.) This Agreement conforms to the Purchase Agreement and RTC guaranteed faithful and punctual payments and performance of RTNE's obligations under the Purchase Agreement, Secured Note, Security Agreement, and "all amendments, addenda, modifications, renewals and replacements thereof, and any agreements related thereto." (Id.) RTC also promised to pay the costs and expenses in enforcing Plaintiff's rights under the Guarantee Agreement, along with any other rights Plaintiff specifically had against RTC. (Id.)

The Guarantee Agreement states the governing law and forum selection as follows:

> Guarantor acknowledged that by execution and delivery of this Guarantee, Guarantor has transacted business in the State of Delaware and Guarantor hereby voluntarily submits, consents to, and waives any defense to the jurisdiction of courts located in the State of Delaware as to all matters relating to or arising from the Guarantee, and agrees that this Guarantee shall be governed by and construed in accordance with the laws of the State of Delaware. EXCEPT AS EXPRESSLY AGREED IN WRITING BY LENDER, THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF DELAWARE SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION OF ANY AND ALL CLAIMS, DISPUTES, AND CONTROVERSIES ARISING UNDER OR RELATING TO THIS GUARANTEE. NO LAWSUIT, PROCEEDING, OR ANY OTHER ACTION RELATING TO OR ARISING UNDER THIS GUARANTEE MAY BE COMMENCED OR PROSECUTED IN ANY OTHER FORUM EXCEPT AS EXPRESSLY AGREED IN WRITING BY LENDER.

(Doc. No. 13-4.)

E. **Convertible Promissory Note**

Prior to closing, Defendants stated they did not have sufficient cash funds and thus the parties agreed to amend the Purchase Agreement and add a Convertible Note. (Doc. No. 1 at ¶ 17; Doc. No. 11-1.) On September 2, 2022, one (1) day after the Secured Note was signed, the

---

[2] The Guarantee Agreement does not specify the date it was signed by the parties.

Convertible Note was executed by RTC and Plaintiff. (Id. at ¶ 19.) Under the terms of the Convertible Note, RTC promised to pay Plaintiff the principal sum of one million one-hundred seventy-five thousand ($1,175,000) dollars. (Id.) If RTC failed to pay the principal sum within thirty (30) days, then Plaintiff could covert the Convertible Note to a promissory note with interest accruing at two percent (2%) per month on the unpaid balance. (Id. at ¶ 20.) The accrued interest would continue until the balance was paid off. (Id.)

> The Convertible Note stated the governing law and forum selection as follows:
>
> This Note shall be governed by and construed under the laws of the State of Delaware as applied to agreements among Delaware residents, made and to be performed entirely within the State of Delaware. The parties agree that any action brought to enforce the terms of this Note will be brought in the appropriate federal or state court having jurisdiction over Will County, Illinois, United States of America.

(Doc. No. 11-1).

On or prior to October 3, 2024, RTC defaulted on the Convertible Note payments. (Doc No. 1 ¶ 36.)

### F. Amended Purchase Agreement

On September 2, 2022, an Amended Purchase Agreement was executed between Plaintiff, Defendants and Innovative Network Designs. (Id. at ¶ 18; Doc. No. 19-1.) As noted, the Amended Purchase Agreement amended only the following terms of the Purchase Agreement: (1) the closing date, which was amended to September 2, 2022; (2) the "Purchase and Sale of Purchased Interests" section, which now includes the Convertible Note, and (3) the "Miscellaneous" section, which added new language to the Waivers, Binding Effects and Counterparts provisions of the Agreement. (See id.) The Amended Purchase Agreement did not amend any other terms to the Purchase Agreement. Thus, the governing law for enforcement of the Purchase Agreement,

8

Delaware law, remains the same for the Amended Purchase Agreement. And, as previously stated, there is no forum selection clause in the Purchase Agreement.

In short, the below table contains a breakdown of each agreement, the parties involved, the forum selection clauses, governing law, relevant count in the Complaint, and the date signed by the parties:

| Agreement | Defendant Bound by Agreement | Forum Selection Clause | Governing Law | Count alleged in Complaint | Date Signed |
|---|---|---|---|---|---|
| **Purchase Agreement** | RTC and RTNE | None | Delaware | 1 | 08/01/2022 |
| **Secured Note** | RTC and RTNE | Delaware | Delaware | 3, 4 | 09/01/2022 |
| **Security Agreement** | RTNE | None | Delaware | 4 | 09/01/2022 |
| **Guarantee Agreement** | RTC | Delaware | Delaware | 1, 3 | Undated |
| **Convertible Note** | RTC | Illinois | Delaware | 2 | 09/02/2022 |
| **Amended Purchase Agreement** | RTC and RTNE | None | Delaware | 1 | 09/02/2022 |

III.  **STANDARD OF REVIEW**

The doctrine of forum non conveniens is a discretionary device permitting a court to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim. Carey v. Bayerische Hypo–Und Vereinsbank AG, 370 F.3d 234, 237 (2d Cir. 2004) (citations and internal quotation marks omitted); RIGroup LLC v. Trefonisco Mgmt. Ltd., 949 F. Supp. 2d 546, 551 (S.D.N.Y. 2013). The Third Circuit has enumerated four (4) factors to guide a district court's consideration of the doctrine of forum non conveniens in the absence of a forum selection clause. These factors are:

    (1)  the amount of deference to be afforded to plaintiffs' choice of forum;

    (2)  the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable;

    (3)  relevant 'private interest' factors affecting the convenience of the litigants;[3] and

    (4)  relevant 'public interest' factors affecting the convenience of the forum.[4]

Collins v. Mary Kay, Inc., 874 F.3d 176, 186 (3d Cir. 2017); see also Kisano Trade & Invest Ltd. v. Lemster, 737 F.3d 869, 873 (3d Cir. 2013). If a forum selection clause is present, a district court may only consider the public interest factors.[5] Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 64 (2013).

---

[3]  The six (6) private interest factors are: (1) plaintiff's choice of forum; (2) defendant's choice of forum; (3) where the claim arose; (4) convenience of the parties; (5) convenience of the witnesses; and (6) location of books and records. See, e.g., Kiker v. SmithKline Beecham Corp., No. 14–1445, 2014 WL 4948624, at *4 (E.D. Pa. Oct. 1, 2014).

[4]  The six (6) public interest factors are: (1) local interest (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3) the enforceability of the judgment; (4) the public policies of the forum; (5) court congestion; and (6) familiarity of trial judge with applicable state law. Id.

[5]  In Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49 (2013), the issue before the United States Supreme Court was whether the Court should transfer the case under 28 U.S.C. § 1404(a) to a different district pursuant to a forum selection clause. There, the Supreme Court expressly declined to decide whether a dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff brings suit in a different district than the one specified in the forum selection clause. Id. at 61. Specifically, the Court held that "[e]ven if a defendant could use Rule 12(b)(6) to enforce a forum-selection clause, that would not change our conclusions that . . . § 1404(a) and the forum non conveniens doctrine provide appropriate enforcement mechanisms." Id. And the Third Circuit Court of Appeals has held that when the district court is faced with a Rule 12(b)(6) motion, it may consider the 1404(a) public and private interest factors to determine whether transfer is more appropriate. Salovaara v. Jackson Nat. Life Ins. Co., 246 F.3d 289, 299 (3d Cir. 2001). But, as noted, because a forum selection clause exists, the court may only consider the public interest factors. See Atl. Marine, 571 U.S. at 64.

However, when there are multiple contracts that form the basis of an agreement between the parties, an issue arises if the contracts have competing forum selection clauses. In Bus Air LLC v. Woods, the court held that when there are multiple agreements that are "interrelated," they should be read as one contract. C.A. No. 19-1435-RGA-CJB, 2019 WL 6329046, at *16-18 (D. Del. Nov. 26, 2019). And when reading the contracts as one, it may result in conflicting or ambiguous clauses. Id. at *18. In this scenario, where there are competing forum selection clauses, either forum may be deemed appropriate. Id. But the court should still weigh the public interest factors to determine whether one forum is more favorable. See Atl. Marine, 571 U.S. at 64.

### IV.  ANALYSIS

In their Motion to Dismiss, Defendants argue that the forum selection clause in the Convertible Note requires that any action brought to enforce its terms must be filed in Will County, Illinois. (Doc. No. 10 at 4.) For this reason, they assert that Delaware is an improper forum for Count II of the Complaint, the breach of the Convertible Note by RTC. (Id. at 6-7.) Plaintiff argues to the contrary that because the six (6) agreements are interrelated, the forum selection clauses in the Secured Note, Guarantee Agreement and Convertible Note are ambiguous, and therefore this case could be brought in either Delaware or Illinois; but because Delaware law applies under all of the agreements, Delaware is the appropriate forum for this case.[6] (Doc. No. 12 at 5.)

---

[6] Alternatively, Plaintiff argues that RTNE lacks standing to seek dismissal of Count II because that claim is not brought against it. (Doc. No. 12 at 16.) Plaintiff also requests that, if the Court found the Complaint deficient, it should be granted leave to file an Amended Complaint. (Id. at 20.) But because the Court finds that venue is proper in the District of Delaware, these arguments are moot.

### A. The Six Contracts are Interrelated and will be Read as One Contract

As noted, when multiple agreements are so "interrelated" in that they incorporate one another by reference, they should be read as one contract. Bus Air LLC, 2019 WL 6329046, at *16-18. In applying Delaware law, Bus Air dealt with the issue where the parties had two contracts with different forum selection clauses. Id. at *18. There, the court found that "where a contract explicitly incorporates another contract by reference, 'the two contracts will be read together as a single contract.'" Id. at *17 (quoting Duff v. Innovative Discovery LLC, No. CIV.A. 7599-VCP, 2012 WL 6096586, at *12 (Del. Ch. Dec. 7, 2012)).

Here, each of the agreements, at a minimum, make a direct or indirect reference to the principal contract, that is, the Purchase Agreement and/or the Amended Purchase Agreement. First, both the Secured Note and Security Agreement make direct reference to the Purchase Agreement.[7] (See Doc. Nos. 13-1, 13-3). Second, the Guarantee Agreement makes reference to the Purchase Agreement, Secured Note, Security Agreement, and "all amendments, addenda, modifications, renewals and replacements thereof, and any agreement related thereto." (Doc. No. 13-4 at 2, Section 1.01(a).) Third, the purpose of the Convertible Note was to amend the payment terms for the Membership Interests as outlined in the Purchase Agreement. Finally, the Amended Purchase Agreement references the Purchase Agreement, Secured Note, and Convertible Note.

---

[7] The Secured Note and the Convertible Note, although promissory notes, are contracts in this case. For a promissory note to be considered a contract it must be a "written promise by one person to pay another person, absolutely and unconditionally, a sum certain at a specified time." Corso v. Concordia Healthcare USA, Inc., No. 21-cv-353, 2023 WL 2631496, at *4 (D. Del. March 24, 2023). Here, the Secured Note and the Convertible Note are contracts because the Secured Note's promise is that RTNE promises to pay Plaintiff one million five-hundred thousand dollars ($1,500,000) by the thirty (30) month anniversary of the closing date. The Convertible Note's promise is that RTC promised to pay Plaintiff one million one-hundred seventy-five thousand dollars ($1,175,000.00) within thirty (30) days from the closing date. Thus, both are contracts.

(Doc. No. 19-1.) Specifically, it outlines the terms of the agreement between Plaintiff and Defendants as follows:

> (b) Purchase Price. Subject to the terms and conditions of this Agreement, in consideration for Company's sale and contribution of the Purchased Interests to Buyer, at the Closing, Buyer shall deliver to Company the Purchase Price, consisting of:
>
> (i) Three Hundred Twenty-Five Thousand ($325,000) Dollars (the "Closing Cash Purchase Price") consisting of Two Hundred Fifty Thousand ($250,000) Dollars CASH and Seventy-five Thousand ($75,000) Dollars of previously deposited earnest money;
>
> (ii) One Million One Hundred Seventy-Five Thousand ($1,175,000) (the "Convertible Note Consideration"), which **Convertible Note Consideration shall be payable on the terms and subject to the conditions set forth in the Convertible Note.**
>
> (iii) Two Million Six Hundred Seventy-Seven Thousand Five Hundred ($2,677,500) in premium payments to a Fixed Index Universal Life Insurance Policy to be owned by and for the benefit of Douglas Rahn, funded over the period of seven (7) years in the amount of Three Hundred Eighty-Two Thousand Five Hundred ($382,500) per year, beginning as of the Closing Date, which policy shall be written and maintained with an insurance company having a financial performance rating of at least A- by AM Best or a financial strength rating of at least A by Standard and Poor's and have such terms and conditions as are mutually agreed between Buyer and Seller (the "Rahn Life Insurance Policy"), to be obtained pursuant to Section 8(c);
>
> (iv) Four Hundred Seventy-Two Thousand Five Hundred Dollars ($472,500) in premium payments to a Fixed Index Universal Life Insurance Policy to be owned by and for the benefit of Eric Speidel, funded over the period of seven years in the amount of Sixty-Seven Thousand Five Hundred Dollars ($67,500) per year, beginning as of the Closing Date, which policy shall be written and maintained with an insurance company having a financial performance rating of at least A- by AM Best or a financial strength rating of at least A by Standard and Poor's and have such terms and conditions as are mutually agreed between Buyer and Seller (the "Speidel Life Insurance Policy" and, together with the Rahn Life Insurance Policy, the "Life Insurance Policies"), to be obtained pursuant to Section 8(c);

> (v) Five Hundred Thousand (500,000) shares of restricted common stock of Parent, to be issued to Seller immediately upon Closing (the "Parent Shares"); and
>
> **(vi) One Million Five Hundred Thousand Dollars ($1,500,000), as adjusted pursuant to Section 1(g) (the "Promissory Note Consideration"), which Promissory Note Consideration shall be payable on the terms and subject to the conditions set forth in the Secured Promissory Note.**

(Doc. No. 19-1 (emphasis added).)

As such, the Convertible Note, along with the Secured Note, Security Agreement, and Guarantee Agreement, are interrelated to create the overall terms of the Purchase Agreement and/or the Amended Purchase Agreement. Thus, when deciding in which forum this case should be brought, the Court ought to look to the clause set forth in the Purchase Agreement and the Amended Purchase Agreement. However, neither the Purchase Agreement nor the Amended Purchase Agreement designate a forum. Instead, the Purchase Agreement reads as follows:

> This agreement shall be governed by and construed in accordance with the domestic laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

(Doc. No. 13-2.) Therefore, because these Agreements do not designate a specific forum, the Court will next look to other contracts that make up the Agreements to determine the appropriate forum for this case.

### B. Competing Forum Selection Clauses Render the Forum Choice Ambiguous

As noted, because the Convertible Note, Secured Note, Security Agreement and Guarantee Agreement are all integrated in the Purchase Agreements, they shall be read as one agreement.

14

When multiple agreements are so interrelated as to be read as one contract, it can result in conflicting or ambiguous clauses. Bus Air, 2019 WL 6329046, at *18. Specifically, in Bus Air, the court, again relying on Duff, held the following:

> [I]t is that in situations like this one (where two agreements with conflicting forum selection clauses are to be read together and where the language of those respective clauses render it "ambiguous" as to whether the parties agreed that certain claims should be exclusively pursued in one state's courts), the effect of this ambiguity is not—as Defendants suggest—to render the forum selection clauses "unenforceable" or "null[.]" (D.I. 15 at 15; D.I. 28 at 9) Instead, the Duff Court suggested that since it was not "crystalline" that the parties had agreed to only one venue as being appropriate . . . the result was that either venue . . . was an appropriate venue for the claim . . . And since the plaintiff in Duff chose to file suit in Delaware state court (one such agreed-upon venue), then case . . . could proceed forward there.

Bus Air, 2019 WL 6329046, at *17. As such, conflicting or ambiguous clauses do not render the agreements unenforceable but instead result in either forum being deemed appropriate. See id. at *18 (finding that the presence of two forum selection clauses rendered them ambiguous and "[t]he right outcome would be that, at a minimum, the claims could be brought [in either forum]."); Duff, 2012 WL 6096586, at *12 (same).

Here, as noted, the Purchase Agreement and the Amended Purchase Agreement, which for the reasons stated above encompass all the contracts, do not designate a specific forum. The Secured Note and Guarantee Agreement, however, contain forum selection clauses designating Delaware as the proper forum. Alternatively, the Convertible Note's forum selection clause designates Illinois as the proper forum. And all the agreements state that the governing law is Delaware law. Thus, because the Convertible Note's forum selection clause is Illinois, and the Secured Note/Guarantee Agreement's forum selection clause is Delaware, from these interrelated documents, the Purchase Agreement and Amended Purchase Agreement now has conflicting clauses. Under Bus Air, the forum selection clauses in the contracts are ambiguous and

15

enforcement of the contract may be brought in either Illinois or Delaware, the latter of which is where Plaintiff chose to file suit.

### C.   Public Interest Factors Weigh in Favor of a Delaware Forum

But as noted, the Court may look to the § 1404(a) public interest factors to determine whether transfer would be more appropriate rather than outright dismissing the case. Salovaara, 246 F.3d at 299.  The six (6) public interest factors again are:  (1) local interest; (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3) the enforceability of the judgment; (4) the public policies of the forum; (5) court congestion; and (6) familiarity of trial judge with applicable state law.  Kiker v. SmithKline Beecham Corp., No. 14–1445, 2014 WL 4948624, at *4 (E.D. Pa. Oct. 1, 2014).  Not all factors are relevant to the analysis, but they are weighed to determine the appropriate forum.

#### 1.   Local Interest

First, where damages or injuries are sustained in a specific locale, then public interest will support the location of the case in that locale.  McCraw v. GlaxoSmithKline, No. 12-2119, 2014 WL 211343 at *6 (E.D. Pa. Jan. 17, 2024) (citing In re Eastern Dist. Repetitive Stress Injury Litig., 850 F. Supp. 188, 195 (E.D.N.Y. 1994)).  Additionally, "Delaware has an interest in regulating the conduct of entities formed under its laws, and this public interest can weigh against granting forum non conveniens relief."  GXP Capital, LLC v. Argonaut Manufacturing Services, Inc. et. Al., 234 A.3d 1186, 1198 (Del. 2020).

Here, the alleged injuries are financial because Plaintiff alleges Defendants defaulted on the contracts.  (See Doc No. 1 at ¶¶ 34, 36.)  Although it is unclear where the financial injury occurred at this juncture, both Defendants are incorporated in Delaware and thus were formed under Delaware law.  (Id. at ¶¶ 8, 9.)  As such, Delaware has an interest in regulating companies formed under its own law.  And because the governing law under each agreement is Delaware law,

that state has a clear local interest in this matter. Therefore, this factor weighs in favor of a Delaware forum.

### 2. Practical Considerations

Second, practical considerations strongly weigh in favor of keeping this case in Delaware. While conflicting terms make the forum selection clause ambiguous, the governing law noted for all of the agreements, including the Convertible Note, is that of Delaware law. Those provisions show that the parties had the intention of applying Delaware law when executing the Purchase Agreement, Secured Note, Convertible Note, Security Agreement, Guarantee Agreement, and Amended Purchase Agreement. This points to the conclusion that the parties intended for Delaware to be the proper forum for any disputes.

Alternatively, at the hearing held with counsel for the parties on the Motion to Dismiss, Defendants also raised the argument that Count II, the breach of the Convertible Note, could be severed from this case in order to enforce the forum selection clause's designation of suit being filed in Illinois. However, because the agreements are interrelated, severance would be inappropriate and impractical. Having two cases involving the same nucleus of facts, occurring at the same time, relying on the same transactions and likely the same experts would result in increased expenses and makes no practical sense. Further, the Illinois court would need to apply Delaware law as noted in the Convertible Note. Therefore, this practical consideration factor weighs in favor of keeping this case in a Delaware forum.

### 3. Enforceability of the Judgment

Next, while the enforceability of judgment is a relevant public factor, a judgment in this case can be enforced in either Delaware or Illinois. There is nothing in particular that makes this case unique from the standard point of enforcing a judgment. This factor is therefore neutral.

### 4. Public Policies of the Forum

Additionally, the Court considers whether either forum has public policies that could determine where litigation would be appropriate. Delaware will honor contractual provisions "so long as the jurisdiction bears some material relationship to the transaction." J.S. Alberici Const. Co., Inc. v. Mid-West Conveyor Co., Inc., 750 A.2d 518, 510 (Del. 2000). Under Del. Code § 2708(a), the existence of a choice of law clause that requires that Delaware law be applied shows that Delaware has a significant for the relationship to the transaction. Ultimately, the parties contracted that Delaware law is applicable to each agreement, making Delaware's interest and policies most fundamental to the case. Thus, this factor weighs in favor of a Delaware forum.

### 5. Court Congestion

Further, the Court must also consider whether this case would create docket congestion in this Court. It would not, and therefore this factor weighs in favor of a Delaware forum.

### 6. Familiarity of Trial Judge with Applicable State Law

Finally, neither party contests that the applicable law set forth in all contracts is Delaware law. While an Illinois court could have some familiarly with Delaware law, the best forum to interpret and rule on Delaware law is a forum in Delaware. Thus, this factor weighs in favor of a Delaware forum.

Since, five (5) out of the six (6) public interest factors weigh in favor of a Delaware forum, with one factor being neutral, and for all of the other reasons stated above, Delaware is the appropriate forum for this case to be brought. Consequently, Defendants' Motion to Dismiss the Complaint will be denied.[8]

---

[8] As noted earlier, when a forum selection clause is in issue, the private interest factors need not be considered. Atl. Marine, 571 U.S. 49 at 51.

## V.  CONCLUSION

For all these reasons, Defendants' Motion to Dismiss (Doc. No. 9) will be denied.  An appropriate Order follows.